CASE 101.—ACTION  BY  JOHN  S.  LARUE  AGAINST  THE
        PROVIDENT SAVINGS LIFE ASSURANCE SOCl-
        ETY OF NEW YORK.—June 17, 1910.

# La Rue v. Provident Savings Life Ins. Soc., N. Y.

Appeal from Henderson Circuit Court.

J. W. HENSON, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Affirmed.

1.   Insurance—Life Insurance—Premiums.—An insurance com-
     pany issuing a life policy for an annual increase in the pre-
     miums based on the age of insured and stipulating that, if
     the mortality in insurer should be as favorable as in the best
     of other insurance companies, the insurance would be ex-
     tended at the original rate of premium, held authorized, on
     the evidence that its mortality was more unfavorable than
     in other insurance companies, to make the increases in the
     premiums provided for.
2.   Insurance—Mutual Insurance Companies—Rights of  Policy
     Holders.—Any mismanagement in a mutual insurance com-
     pany does not give one policy holder the right to recover at
     the expense of other policy holders, but the interest of all
     will be affected alike.
3.   Insurance—Statements of Agent—Effect.—A statement of an
     agent of insurer soliciting a policy that insurer was not in
     the habit of charging any more from year to year than the
     first premium paid, and that the applicant, though shown the
     clause authorizing increased premiums on a specified condi-
     tion, would not have to pay a higher premium from year to
     year, was simply an expression of opinion of the agent, and
     did not affect the terms of the policy.

YEAMAN & YEAMAN for appellant.

WM. MARSHALL BULLITT, KEITH L. BULLITT, and BUL-
LITT & BULLITT for appellee.

OPINION OF THE COURT BY COMMISSIONER CLAY— Affirming.

On March 17, 1890, the appellee, the Provident Saving Life Insurance Society of New York, issued to appellant, John S. La Rue, who was then 57 years of age, a policy of insurance for $10,000, payable upon his death to his legal representatives or assigns. The policy was on the ''yearly renewal plan''; that is, the amount of each premium is based upon the age actually attained by the insured. The first premium, which was based upon the fact that appellee was 57 years of age, was $332.50. Thereafter the policy provided for an annual increase in the premium, in acordance with the following table:

| Age Actually Attained. | Annual. |
| --- | --- |
| 57 | $33.25 |
| 58 | 35.75 |
| 59 | 38.50 |
| 60 | 41.50 |
| 61 | 45.00 |
| 62 | 49.00 |
| 63 | 53.00 |
| 64 | 57.50 |
| 65 | 60.76 |
| 66 | 64.96 |
| 67 | 70.72 |
| 68 | 77.16 |
| 69 | 84.24 |
| 70 | 92.12 |

The policy also contained the following provisions:

"Note.—Provided the mortality in this society shall be as favorable in the future as it has been in the past in the largest and best of the other companies (thus far it has been more favorable), this insurance will be extended and renewed during the whole expectation or probable lifetime of the insured at the rate of premium charged for the first year only of the policy."

"Section 4. After deducting the expense charge, which is limited to four dollars per annum on each $1,000 insured, the society agrees to appropriate the residue of each renewal premium paid upon this and upon other similar policies as follows: So much thereof as is necessary for its share of death losses will be deposited in such bank or banks as shall be designated by the directors as a death fund, to be used solely in settlement of death claims. The remainder thereof will be deposited in trust as a guaranty fund in the Farmers' Loan & Trust Co., and will be applied to offset the otherwise unavoidable increase in the rates of premium on account of advancing age."

At the date of the policy appellant's expectancy was 17 1-5 years. For several years after the issuance of the policy—that is, up to and including the year 1897—appellee demanded and appellant paid the annual premuim of $332.50. Just prior to the time the premium for the year 1898 became due, appellee notified appellant that he must pay a premium of $415.63, which was the premium provided for the age which appellant had then attained. Thereafter appellee demanded the increased premium provided for in the policy up to and including the year 1906. Appellant paid the premiums demanded, which are as follows:

| 1898 | ............................ | $415.63 |
| 1899 | ............................ | 478.60 |
| 1900 | ............................ | 606.20 |
| 1901 | ............................ | 606.20 |
| 1902 | ............................ | 690.50 |
| 1903 | ............................ | 739.50 |
| 1904 | ............................ | 793.70 |
| 1905 | ............................ | 854.20 |
| 1906 | ............................ | 921.70 |

On December 13, 1906, appellant instituted this action against appellee, charging that the mortality among the persons insured by appellee was, and ever since the issuance of the policy had been, as favorable as in the largest and best of the other life insurance companies, and that appellee's representations to the contrary were false and fraudulent, and were made for the purpose of extorting money from appellant and of compelling him to pay larger sums than were necessary as premiums on said policy. It was further charged that the amount paid by appellant as premiums, together with the interest thereon, amounted to $13,360; that of the amount so paid only $6,052 was necessary to carry the policy without loading; and that the appellant actually paid appellee the sum of $4,069 in excess of the contract premium of $332.50 per year. The allegations of the petition were denied by answer. Proof was then taken and the case submitted to the chancellor. Judgment was rendered dismissing appellant's petition. From that judgment he appeals.

Upon the question of the mortality in appellee company as compared with that in the largest and best of the other insurance companies, the only proof offered was by appellee. Upon this point, Arthur

Hunter, actuary of the New York Life Insurance Company, testified that the mortality in that company, from 1880 to 1906, was 80 per cent of the American Experience Table. William Anderson Hutcheson, actuary of the Mutual Life Insurance Company, testified that the mortality in that company from 1880 to 1905 was from 77 to 86 per cent. of the American Experience Table. Robert Henderson, an actuary in the Equitable Life Assurance Society, testified that the mortality in that company, from 1884 to 1906, was from 75 to 91.85 per cent. of the American Experience Table. Ralph K. Hubbard, comptroller of the appellee company, testified that the mortality in his company, from 1890 to 1906, was 112 per cent. of the American Experience Table. To the same effect is the testimony of Henry Moir, appellee's actuary.

In addition to the above testimony, C. B. Bullock, who was then an employe in the office of the Kentucky insurance department, testified that the records in his department showed that the mortality in the appellee company rapidly increased from the year 1891 to 1906. He says that, although the business of the company increased only 135 per cent. from 1891 to 1906, the number of deaths occurring during that period increased 226 per cent. As there was no evidence in the record tending to show that the mortality in the appellee company was as favorable from 1897 on as it was in the largest and best of the other companies, but all the evidence goes to show that the mortality in appellee company was very much more unfavorable than in the other companies, the chancellor did not err in holding that appellee company was authorized, under the terms of

the policy, to make the increases provided for in the policy.

But it is insisted that the evidence for appellee is not sufficient because the mortality, given by its witnesses, was arrived at from a calculation based upon the class of policies to which the policy in question belonged. Such is not the fact, however. Henry Moir, appellee's actuary, testified that he was able to state from the records of the company and from the published records of some of the largest companies that the mortality in the Provident Saving in the years subsequent to 1891 became very much heavier than the mortality prior to 1890 in the Provident Saving and in the other companies referred to; that in determining the mortality charge against the policy' in question for each year the average mortality of the society was used. He did not use the mortality for the particular class of policy to which the policy in question belonged. Had he done so, the increase in the premium would have been considerably greater than it had been.

Upon the question whether or not the surplus, after the payment of current death losses and the deduction of $4 per thousand as an expense charge, was sufficient to offset any subsequent increase over the initial premium, the only testimony in the record tends to show that the policy was carried at an actual loss to appellee.

Some effort was made to show that the affairs of the society were mismanaged. We are inclined to the opinion, however, that the proofs fail to establish this fact. Even if it had, this would give appellant no right to recover. The Provident Saving Life Insurance Society is a mutual company, and any mismanagement would not give one policy holder the

ıight to recover at the expense of the others. The interest of all the policy holders would be affected alike.

Much stress is laid upon the fact that appellant claims that appellee's agent stated that the company was not in the habit of charging any more from year to year than the first premium paid, and showed appellant the clause stating that, unless the death rate in that company should become greater than it was or had been in the other large companies, this same rate would hold throughout appellant's expectancy, and that appellant would not have to pay a higher premium from year to year than he paid the first year. This was simply an expression of opinion on the part of the agent. He did not attempt, nor was he authorized to add to or subtract from the terms of the policy. Appellant admits that he read the policy and saw the table providing for the increase. He is not, therefore, in position to complain of an increase in the premium which the policy authorizes and the proof shows was justified.

The only questions involved in this case are questions of fact. The evidence is all cne way, and supports the finding of the chancellor. That being true, we conclude that the judgment should be affirmed; and it is so ordered.